IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                         No. 10-CR-932 WJ

JUAN MANUEL APODACA-LEYVA,

    Defendant.

**MEMORANDUM OPINION AND ORDER SUSTAINING DEFENDANT'S OBJECTION TO THE PRESENTENCE REPORT AND DENYING DEFENDANT'S MOTION FOR VARIANCE AND/OR DOWNWARD DEPARTURE**

THIS MATTER comes before the Court on Defendant Juan Manuel Apodaca-Leyva's Objection to Presentence Report (Doc. 27) as well as the Defendant's Sentencing Memorandum and Motion for Variance and/or Downward Departure (Doc. 30). The Defendant objects to the determination in the Presentence Report ("PSR") that his offense level should be increased by 16 levels because his prior aggravated assault constitutes a crime of violence under U.S.S.G. § 2L1.2(b)(1)(A)(ii). The United States agrees with the Defendant that a 16-level enhancement is not warranted. The Defendant also argues that the PSR over-represents his criminal history and asks for a downward departure or variance on that basis. This Court holds that the Defendant's prior conviction for aggravated assault does not constitute a crime of violence and SUSTAINS the Defendant's Objection to the PSR. The Court further holds that the PSR does not over-represent the Defendant's criminal history and DENIES the Defendant's Motion for Variance and/or Downward Departure.

**BACKGROUND**

In April 2010, the Defendant entered a plea agreement under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure in which he pled guilty to reentry of a removed alien in violation of 8 U.S.C. §§ 1326(a)(1) & (2) and 8 U.S.C. § 1326(b)(2).  In the plea agreement, the Defendant stipulated to a maximum offense level of 20.

Subsequently, the United States Probation Officer filed the PSR which calculated the Defendant's total offense level at 21.  The PSR set the Defendant's base offense level at 8, pursuant to U.S.S.G. § 2L1.2(a) (setting a base offense level at 8 for unlawfully entering the United States).  It then increased his base offense level by 16 points pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(ii) which applies a 16-level enhancement whenever a defendant has previously been convicted of a "crime of violence."  The PSR determined that the Defendant's 1990 conviction in Arizona state court for aggravated assault qualified as a "crime of violence."  Finally, the PSR reduced his offense level by 3 points for acceptance of responsibility.  Those calculations resulted in a total offense level of 21.  Because the Defendant had stipulated to a maximum offense level of 20 under the plea agreement, the PSR adopted a total offense level of 20.

The PSR also assessed the Defendant 10 criminal history points, which placed him in criminal history category V.  In calculating the Defendant's criminal history, the PSR assigned the Defendant three points for his 1990 felony conviction in Arizona state court for aggravated assault.  The PSR then assigned the Defendant one point for each of this two prior misdemeanor convictions: one in New Mexico state court for driving while intoxicated and one in Arizona state court for criminal damage.  Finally, the PSR assigned the Defendant two points for his 2007 felony reentry conviction for which he served 10 months in custody before he was deported to Mexico.  In addition, the PSR assessed three additional points pursuant to U.S.S.G. § 4A1.1(d)

because of the recency of the Defendant's last conviction. This resulted in 10 total criminal history points, placing the Defendant in criminal history category V.

With a total offense level of 20 and a criminal history category of V, the Defendant faces an advisory Guidelines sentencing range of 63 to 78 months. The Defendant argues that PSR erred in two ways. First, he argues (and the United States agrees) that his 1990 Arizona conviction for aggravated assault does not constitute a "crime of violence" and that a 16-level enhancement in his offense level is not appropriate. Second, he argues that a criminal history category of V over-represents his criminal history. The Court addresses both arguments below.

## ANALYSIS

### I. Propriety of 16-Level Enhancement for Crime of Violence

The United States and the Defendant agree that the PSR incorrectly assigned a 16-level enhancement because the Defendant's prior Arizona conviction for aggravated assault constituted a crime of violence under U.S.S.G. § 2L1.2(b)(1). The United States Probation Officer disagrees and argues that the prior aggravated assault qualifies as a crime of violence. According to the applicable commentary, a crime of violence is defined as: "any of the following offenses under federal, state, or local law: Murder, manslaughter, kidnapping, *aggravated assault*, forcible sex offenses . . ., statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, [or] burglary of a dwelling. . . ." U.S.S.G. § 2L1.2 cmt. n.1(B)(iii) (emphasis added).[1] In order to determine whether a state offense qualifies as a

---

[1] The commentary also defines a crime of violence to include "any other offense under federal, state or local law that has an element the use, attempted use, or threatened use of physical force against the person of another." *Id.* The PSR did not base its 16-level enhancement on this part of the definition, however. Furthermore, both the Defendant and the United States agree that the Arizona aggravated assault statute does not require the defendant to use, attempt to use or threaten to use physical force against the victim. Accordingly, the Court

crime of violence, courts must look beyond how a state chooses to label its statute and "consider whether the statute corresponds with the 'uniform generic definition' of the crime, using the analytical framework set out in *Taylor v. United States*, 495 U.S. 575 (1990)." *United States v. Garcia-Caraveo*, 586 F.3d 1230, 1233 (10th Cir. 2009). Under this framework, courts ask whether the state statute defining the crime "roughly correspond[s] to the definitions of [the crime] in a majority of the States' criminal codes." *Id.* (quoting *Taylor*, 495 U.S. at 589). Courts also consult "prominent secondary sources, such as criminal law treatises and the Model Penal Code." *Id.*

In other words, this Court must determine whether Arizona's definition of aggravated assault corresponds with the generic definition of that offense culled from other state statutes and secondary sources. I begin by defining the generic crime of aggravated assault. The Tenth Circuit has not yet ruled on this issue in a published decision. *But see United States v. Gastelum-Laurean*, 370 Fed.Appx. 938, 942 (10th Cir. 2010) (unpublished) (finding that the generic elements of aggravated assault include either causing serious bodily injury or the use of a dangerous weapon). However, a variety of other courts have held that aggravated assault generally occurs only when a person: (1) causes serious bodily injury to another or (2) uses a dangerous weapon. *See United States v. Palomino Garcia*, 606 F.3d 1317, 1332 (11th Cir. 2010) ("[W]e hold that the generic offense of 'aggravated assault' under § 2L1.2 of the Guidelines involves a criminal assault accompanied by the aggravating factors of either the intent to cause serious bodily injury to the victim or the use of a deadly weapon."); *United States v. McFalls*, 592 F.3d 707, 717 (6th Cir. 2010); *United States v. Esparza-Herrera*, 557 F.3d 1019, 1024-25

---

need not address this part of the definition.

(9th Cir. 2009); *United States v. Fierro-Reyna*, 466 F.3d 324, 327-29 (5th Cir. 2006).  In defining aggravated assault, these courts have consulted other state criminal codes, secondary sources and, most importantly, the Model Penal Code.  According to the Model Penal Code, aggravated assault occurs when a person "(a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; or (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon."  Model Penal Code § 211.1(2).  Joining the other courts that have so held, I hold that the definition of aggravated assault laid out in the Model Penal Code correctly approximates the generic, contemporary definition of the crime.

Next, I must analyze the Arizona statute defining aggravated assault and decide whether it comports with the generic definition of that crime in the Model Penal Code.  In general, a person commits assault under Arizona law by:

> 1. Intentionally, knowingly, or recklessly causing any physical injury to another person;
> 2. Intentionally placing another person in reasonable apprehension of imminent physical injury; or
> 3. Knowingly touching another person with the intent to injury, insult, or provoke such person.

*Id.* § 13-1203.  Arizona law identifies particular assaults which qualify as aggravated assaults.

> A person commits aggravated assault if the person commits an assault as prescribed by section 13-1203 under any of the following circumstances:
>     1. If the person causes serious physical injury to another. . . .

*Id.* § 13-1204(A).  Here, the Defendant was convicted of aggravated assault under Ariz. Rev. Stat. § 13-1204(A)(1) when he struck another car while intoxicated and injured its passengers.

At first glace, it appears that the Arizona aggravated assault statute comports with the

Model Penal Code's definition.  After all, the Arizona aggravated assault provision under which this Defendant was convicted specifically requires serious bodily injury, *see* Ariz. Rev. Stat. § 13-1204(A)(1), which is one of the elements of the generic offense.  However, a closer look at the Model Penal Code reveals that the mens rea of the two offenses are not the same.  The Model Penal Code states that aggravated assault occurs when a person "attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly *or recklessly under circumstances manifesting extreme indifference to the value of human life*."  § 211.1(2) (emphasis added).  The Arizona statute, by contrast, states that aggravated assault occurs when a person causes serious bodily injury to another "intentionally, knowingly, or *recklessly*."  Ariz. Rev. Stat. § 13-1203 (emphasis added).  Mere recklessness is a less culpable mens rea than recklessness under circumstances manifesting extreme indifference to human life.  In other words, the Arizona aggravated assault statute is broader, and encompasses more conduct, than the Model Penal Code.

At least two other courts have held that this difference matters.  In *United States v. Esparza-Herrera*, the Ninth Circuit addressed this a different provision of this same Arizona statute and held that it does not comport with the generic definition of aggravated assault.

> We agree . . . that the Model Penal Code commentary shows that the "extreme indifference" recklessness requirement establishes a mens rea standard for aggravated assault arguably higher than ordinary recklessness.  The commentary to the Model Penal Code definition of aggravated assault states that the "extreme indifference" clause specifies a "special character of recklessness." . . . We hold that under the categorical approach, assessing the law of other jurisdictions and scholarly comment, ordinary recklessness is a broader mens rea requirement for aggravated assault than is "recklessness under circumstances manifesting extreme indifference to human life."  Accordingly, we conclude that [the Arizona statute] is broader than the Model Penal Code's definition of aggravated assault because the Arizona statute alone encompasses acts done with ordinary recklessness.

557 F.3d 1019, 1024 (9th Cir. 2009).  The Ninth Circuit then canvassed other state's criminal

codes and found that at least 33 jurisdictions require a heightened mens rea for aggravated assault. *Id.* at 1024-25 (finding that 22 states require either knowledge or intent and another 10 states plus the District of Columbia require extreme-indifference recklessness). Similarly, the Sixth Circuit held that the South Carolina common-law crime of aggravated assault does not qualify as a crime of violence because it encompasses merely reckless behavior.

> Under the Model Penal Code definition, a person is guilty of aggravated assault only when he acts . . . recklessly under circumstances manifesting extreme indifference to the value of human life . . . and causes serious bodily injury. Because South Carolina courts have upheld [aggravated assault] convictions in cases involving merely reckless conduct, a conviction for [aggravated assault] does not qualify categorically as a generic aggravated assault.

*See United States v. McFalls*, 592 F.3d 707, 717 (6th Cir. 2010). These cases support the proposition that the Arizona aggravated assault statute contains a broader mens rea than the generic, contemporary definition of that crime.

      Because the Arizona statute does not comport with the generic definition of aggravated assault, the Defendant's conviction cannot qualify as an aggravated assault. Accordingly, the Defendant's conviction does not constitute a crime of violence under U.S.S.G. § 2L1.2(b)(1)(A)(ii) and a 16-level enhancement is not appropriate. At the hearing on this matter, the parties represented to the Court that a 4-level enhancement, rather than a 16-level enhancement, was appropriate pursuant to U.S.S.G. § 2L1.2(b)(1)(D), which elevates a defendant's base offense level by four levels for a prior felony conviction. The PSR determined, and the parties agree, that the Defendant's base offense level is 8. A four-level enhancement elevates the Defendant's offense level to 12. Finally, the Defendant will continue to receive a three-point reduction for acceptance of responsibility. Therefore, the Defendant's total offense level is 9.

**II. Over-representation of Criminal History**

Next, the Defendant argues that a criminal history category of V significantly over-represents his criminal history and requests a downward departure or a variance on this basis. He does not, however, identify any errors made by the Probation Officer in calculating his criminal history. His primary reason for requesting a downward departure is that his advisory Guidelines sentence of 63 to 78 months is far higher than his last felony reentry sentence of 10 months. The Court finds that the Defendant's arguments on this point are moot given that the Court will not impose a 16-level enhancement for the Defendant's prior aggravated assault conviction. With a new offense level of 9 and a criminal history category of V, the Defendant faces an advisory Guidelines sentence of 18 to 24 months. This advisory range is not significantly higher than his previous felony reentry sentence of 10 months. Accordingly, the Court denies the Defendant's motion for a downward departure or variance on this basis.

## CONCLUSION

For the reasons given above, the Court SUSTAINS the Defendant's Objections to the Presentence Report on the ground that the Defendant's prior Arizona conviction for aggravated assault does not constitute a "crime of violence" pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(ii). Furthermore, the Court DENIES Defendant's Motion for a Variance and/or Downward Departure because the Defendant's criminal history category does not significantly over-represent his criminal history. With a total offense level of 9 and a criminal history category of V, the Defendant faces an advisory Guidelines sentence of 18 to 24 months.

**SO ORDERED.**

_____
UNITED STATES DISTRICT JUDGE